IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KEVIN TAYLOR, of Rockport, Knox County, State of Maine,<br><br>    Plaintiff,<br><br>v.<br><br>KNOX COUNTY FISH AND GAME ASSOCIATION, INC., a Maine nonprofit organization,<br><br>    Defendant. | Case No. |

**FEDERAL COMPLAINT WITH JURY DEMAND**

NOW COMES Plaintiff, Kevin Taylor, by and through undersigned counsel, and complains against Defendant, Knox County Fish and Game Association, Inc, as follows:

**I.    INTRODUCTION**

1. This is a civil action for disability discrimination in public accommodation, retaliation, and related tort damages arising from the Knox County Fish and Game Association's ("KCF&G" or "Defendant") failure to provide accessible routes at its Beaver Lodge facility in Hope, Maine, and its subsequent campaign to punish and stigmatize Plaintiff Kevin Taylor ("Mr. Taylor" or "Plaintiff") after he complained to Defendant's leadership and to state and federal civil-rights authorities.

2. On July 23, 2024, Mr. Taylor—then confined to a wheelchair and under strict non-weight-bearing medical restrictions due to an ongoing foot infection, amputation, and an external fixation device—attended a dinner/meeting held at Beaver Lodge. Because Defendant's ramps were dangerously designed and not accessible for wheelchair users, Mr. Taylor was forced into an unsafe alternative method of entry and movement. In the

1

course of negotiating Defendant's defective ramp surfaces, Mr. Taylor's walker became stuck; he was forced to bear stress through a medically vulnerable limb; and pins in his external fixation device broke, causing significant pain and additional injury.

3. After Mr. Taylor complained internally (including to Defendant's Executive Committee) and invoked his civil rights through administrative processes, Defendant responded not with accessibility remediation, but with hostility and retaliation. Defendant terminated Mr. Taylor's membership and his wife's membership; ordered removal of their personal property; portrayed Mr. Taylor as a malicious complainant who "created havoc;" accused him of misconduct connected to insurance and licensing issues; and, through Defendant's President, sought a "no trespass" order from law enforcement—explicitly linking that ban to Mr. Taylor's filing of complaints with the Maine Human Rights Commission and other agencies.

4. Mr. Taylor brings this action to vindicate his right to full and equal access to public accommodations under Maine and federal law and to recover damages for physical injury, pain and suffering, emotional distress, reputational harm, and other losses proximately caused by Defendant's conduct. Mr. Taylor also seeks declaratory and injunctive relief requiring Defendant to remove barriers and cease discriminatory and retaliatory practices, including rescinding Defendant's retaliatory exclusion of Mr. Taylor from the property.

## II.  PARTIES

5. Plaintiff Kevin Taylor is an individual residing in Rockport, Maine.

6. Defendant Knox County Fish and Game Association, Inc. is a Maine nonprofit organization with a mailing address at P.O. Box 414, Union, Maine 04862, and a physical

address at or about 128 Beaver Lodge Road, Hope, Maine 04862/04847 (Beaver Lodge). Upon information contained in Defendant's submissions to the Maine Human Rights Commission, Defendant has at least one paid employee (a caretaker) and operates Beaver Lodge and associated grounds, including areas used for meetings, events, camping, and rentals.

7. At all times relevant, Defendant owned, controlled, managed, maintained, and/or operated Beaver Lodge and the ramps and routes used by guests and attendees to access the building and restrooms.

## III.    JURISDICTION AND VENUE

8. This action asserts claims under Maine law, including the Maine Human Rights Act, 5 M.R.S. § 4551, et seq., as well as federal disability-rights protections applicable to places of public accommodation.

9. This Court has supplemental jurisdiction over Plaintiff's Maine law claims pursuant to 28 U.S.C. § 1367, because those state claims form part of the same case or controversy as Plaintiff's federal claims.

10. To the extent Plaintiff asserts federal claims, this Court has subject matter jurisdiction over those claims pursuant to federal-question jurisdiction. 28 U.S.C. § 1331.

11. Venue is proper in this judicial district because Defendant operates Beaver Lodge in Hope, Maine, the discriminatory denial of access and injury occurred in Maine, and Defendant's retaliatory actions were directed at Plaintiff in Maine. 28 U.S.C. § 1391 (U.S. 2011).

### IV.    CONDITIONS PRECEDENT / ADMINISTRATIVE EXHAUSTION

12. Plaintiff filed a complaint of discrimination in public accommodation with the Maine Human Rights Commission ("MHRC"), alleging disability discrimination by Defendant concerning Beaver Lodge's inaccessible ramps and the injury suffered on July 23, 2024. The MHRC complaint was assigned No. PA24-0490, Taylor v. Knox County Fish and Game Association.

13. On October 9, 2025, the MHRC issued Plaintiff a Notice of Right to Sue upon Plaintiff's request. The Notice states it is issued pursuant to 5 M.R.S. § 4612, sub § 6 and § 4622, sub § 1, ¶ C, and that suit must be brought within two (2) years of the act of unlawful discrimination or within 90 days of issuance of the letter, whichever is later, and Plaintiff has timely commenced this action in accordance with 5 M.R.S. §§ 4612 and 4622 and the Notice of Right to Sue issued by the MHRC.

14. Plaintiff satisfies all conditions precedent to bringing his MHRA claims, including administrative filing and receipt of the Right to Sue notice. Plaintiff brings this action within the limitations period stated in the Notice of Right to Sue and Maine law.

### V.    FACTUAL ALLEGATIONS

A. *Plaintiff's Disability and Mobility Restrictions*

15. Mr. Taylor is an individual with a disability. As of July 23, 2024, he had been confined to a wheelchair and under strict non-weight-bearing restrictions since approximately October 2023 due to an ongoing foot infection and amputation.

16. Mr. Taylor's condition was medically complex and serious. The wound was not healing, and Mr. Taylor had been placed in an external fixation device to correct the position of his foot after amputation and to facilitate healing of the ongoing wound.

17. The external fixation device required careful avoidance of weight bearing and mechanical stress. A foreseeable consequence of unsafe walking or forced weight bearing was hardware stress, pin compromise, acute pain, and exacerbation of injury.

B. *Defendant's Facility and Its Use as a Public Accommodation*

18. Defendant owns and operates Beaver Lodge in Hope, Maine. On July 23, 2024, Beaver Lodge hosted a dinner/meeting associated with the Alford Lake/Lermond Pond Association. Notices for the event described it as a "Lake Community Potluck" at "Beaver Lodge," stating "BRING A NEIGHBOR!" and "EVERYONE IS INVITED."

19. Defendant also rents Beaver Lodge as a venue for weddings and other events. Defendant has expressly acknowledged that the Lodge is used as a wedding venue and that the facility is rented for events, meetings, reunions, and similar functions.

20. By operating Beaver Lodge as a venue made available for gatherings and rentals beyond a purely private home setting, and by allowing or hosting events described as open invitations ("Everyone is invited"), Defendant holds out Beaver Lodge as a place where members of the public and invitees may seek access and participation.

C. *The July 23, 2024, Incident: Architectural Barriers, Unsafe Access, and Injury*

21. On July 23, 2024, Mr. Taylor attended the Beaver Lodge meeting/dinner while using a wheelchair.

22. Weather conditions were wet and hazardous. Plaintiff alleges it was raining and the surfaces were slippery; Defendant later disputed whether rain was occurring at the exact time. Regardless of whether the ramp surface was wet from rain that moment or wet and slippery due to design and maintenance, the relevant fact is that Defendant's access route

5

lacked safe, accessible, slip-resistant features adequate for wheelchair users and persons with mobility impairments.

23. The front ramp onto the porch was steep and unsafe. Because of the ramp's steep angle and slippery surface, Mr. Taylor could not propel himself up the ramp. He was forced to rely on assistance from his wife, and even then, his wife reasonably feared the ramp was unsafe, particularly given the wet conditions and the absence of slip resistance.

24. Plaintiff and his wife attempted an alternative route: a second ramp near the restrooms. That route was not reasonably accessible for a wheelchair user. Mr. Taylor's wheelchair became stuck due to the configuration and spacing/orientation of the ramp boards.

25. Mr. Taylor and his wife then attempted to use a walker as a last resort. This was medically contraindicated given Mr. Taylor's non-weight-bearing restriction and external fixation device, but it was forced upon him by Defendant's inaccessible routes and lack of an accessible means of entry.

26. The walker wheels also became stuck between the boards of the bathroom-side ramp. Because the walker became stuck, Mr. Taylor was forced to place his externally fixated leg/device down on an uneven, non-flat ramp surface and to exert physical effort inconsistent with his medical restrictions.

27. As a direct and foreseeable consequence of Defendant's inaccessible and unsafe ramp design and maintenance, pins in Mr. Taylor's external fixation device broke, causing significant pain and further injury.

28. Mr. Taylor experienced pain and suffered harm beyond the immediate incident. Hardware failure in an external fixation device is a serious complication; it can

destabilize healing, increase the risk of infection and further medical intervention, and cause significant physical and emotional distress.

29. Defendant's later attempt to cast doubt on injury because Mr. Taylor did not visibly exhibit pain during the meeting is both medically uninformed and legally irrelevant. Many serious injuries do not present with immediate outward displays. Moreover, individuals with chronic medical conditions frequently attempt to endure pain privately to avoid disruption or embarrassment—particularly in a public setting.

D. *Notice to Defendant and Defendant's Knowledge of the Barrier*

30. Plaintiff and his wife promptly raised concerns about ramp accessibility and safety with Defendant's leadership. On August 1, 2024—nine days after the July 23, 2024, incident—the issue was brought to Defendant's Executive Committee.

31. Minutes of Defendant's Executive Committee meeting reflect discussion of "replace the stairs and rebuild the access ramp" and also acknowledge that the "bathroom ramp needs work too," demonstrating that Defendant was on notice of deficiencies in the routes used by Mr. Taylor.

32. Defendant's caretaker later replaced certain ramp boards "later in the season," according to Defendant's President. That repair activity constitutes additional evidence that Defendant knew the ramp configuration was defective and required correction.

33. Despite this notice, Defendant did not promptly provide an accessible alternative route, did not adopt any written policy addressing accessibility, and did not implement adequate corrective measures to ensure safe access for persons with disabilities.

E. *Plaintiff's Protected Activity and Defendant's Retaliation and Escalation*

34. Plaintiff pursued protected activity by reporting disability-access barriers through appropriate channels, including complaints to the MHRC and a report to the U.S. Department of Justice Civil Rights Division concerning ADA-related accessibility issues (DOJ Civil Rights Division record number 494453-WQZ, submitted August 16, 2024).

35. Rather than addressing the discrimination, Defendant's President and leadership undertook a campaign to discredit Plaintiff, minimize his disability, and recast his protected complaints as harassment and misconduct.

36. In Defendant's February 24, 2025, submission to the MHRC signed by Walter J. Simmons (Defendant's President), Defendant admitted it had "no written policy addressing accessibility," minimized Plaintiff's disability as "short term," and questioned why Plaintiff "took six months" to bring the matter to the MHRC—despite Plaintiff's internal complaint on August 1, 2024, and the DOJ report filed August 16, 2024.

37. In the same submission, Defendant's President characterized Plaintiff's complaints as a "flurry of allegations," labeled them "specious," and asserted that Plaintiff's involvement of agencies was an "irksome waste of resources." These statements evidence animus toward disability-rights enforcement and hostility toward Plaintiff's exercise of protected rights.

38. On December 5, 2024, Defendant's Executive Committee issued a written "official notice" terminating the memberships of Kevin Taylor and Lynn Taylor. The letter accused them of "actions detrimental to KCF&G," asserted that they misled an insurance inspector and caused cancellation of insurance coverage, complained they made anonymous reports to municipal authorities, and blamed them for the fact that Defendant

would not "be able to reopen the campground until we are licensed by the state." The letter demanded turnover of records and removal of personal property from KCF&G land by December 31, 2024.

39. The termination letter explicitly linked Defendant's punitive action to Plaintiff's complaints to outside authorities ("corroboration from our insurer, the [Code Enforcement Officer] in the Town of Hope, and [HHS]"), thereby demonstrating retaliatory motive.

40. On January 17, 2025, Defendant's President contacted the Knox County Sheriff's Office, reporting what he described as "harassment" by Mr. Taylor and explaining that Mr. Taylor had been "filing complaints against the Club," including complaints to "the Fire Marshall's office, the Human Rights Commission and other agencies." According to the deputy report, the responding officer advised Defendant's President that law enforcement could not prevent Plaintiff from making agency complaints, but that Defendant could request that Plaintiff be trespassed from the property.

41. Defendant's President then requested that Plaintiff be trespassed. A sheriff's deputy later served a trespass notice prohibiting Plaintiff from accessing Knox County Fish & Game Association property, further cementing Defendant's retaliatory exclusion of Plaintiff from the very facility whose accessibility failures gave rise to Plaintiff's complaint.

42. Defendant's acts—terminating Plaintiff's membership, stigmatizing him as a liar and troublemaker, and formally banning him from the premises—would deter a reasonable person with a disability from asserting rights to accessibility and from reporting discrimination.

F. *Harm to Plaintiff*

43. As a direct and proximate result of Defendant's conduct, Plaintiff suffered physical injury, pain, and complications associated with broken pins in his external fixation device; emotional distress and humiliation; and interference with his ability to participate in meetings and community events without facing barriers and hostility.

44. Plaintiff also suffered reputational harm. Plaintiff served as Defendant's Treasurer for approximately 15 years and handled significant responsibilities. Defendant's President acknowledged Plaintiff "has done a good job for the association" and that Plaintiff represented Defendant's interests with insurers, utilities, the Town of Hope, and the State of Maine. Against that backdrop, Defendant's subsequent accusations—suggesting Plaintiff created "havoc" and caused insurance and licensing problems—were especially damaging and were calculated to undermine Plaintiff's standing in the community and within the organization.

45. Plaintiff incurred out-of-pocket costs and losses, including but not limited to medical-related costs and expenses associated with loss of membership benefits and exclusion from property and activities.

## VI.   CLAIMS FOR RELIEF

**COUNT I – DISABILITY DISCRIMINATION IN PUBLIC ACCOMMODATION (Maine Human Rights Act)**

46. Plaintiff realleges and incorporates by reference paragraphs 1 through 46 as if fully set forth herein.

47. The Maine Human Rights Act prohibits discrimination in public accommodation on the basis of physical or mental disability. 5 M.R.S. § 4552, et seq.

48. Defendant operated Beaver Lodge and made it available for events, meetings, and rentals, including functions held out as open invitations to the community. Defendant therefore operated a place of public accommodation within the meaning and protective purpose of the MHRA.

49. Plaintiff is an individual with a disability and, as of July 23, 2024, required wheelchair access and accessible routes due to serious medical limitations, including non-weight-bearing status and an external fixation device.

50. Defendant denied Plaintiff full and equal access by failing to provide a safe, accessible route into and within Beaver Lodge, including a route to restroom-adjacent access points, and by maintaining ramps whose design and condition created barriers that prevented independent wheelchair use and forced unsafe alternative measures.

51. Defendant's failure was not a mere inconvenience. The barriers forced Plaintiff to use a walker contrary to medical restrictions, created a foreseeable risk of harm, and in fact caused physical injury.

52. Defendant had notice of accessibility deficiencies—through the incident itself, Plaintiff's prompt report to the Executive Committee on August 1, 2024, internal discussion of ramp work, and later partial repairs—yet failed to promptly and adequately remediate barriers or to implement policies to prevent recurrence.

53. Defendant's actions and omissions constitute disability discrimination in public accommodation in violation of the MHRA, 5 M.R.S. § 4552, et seq., entitling Plaintiff to all remedies available under Maine law, including compensatory damages, equitable relief, and attorney's fees and costs to the extent permitted.

**COUNT II – RETALIATION FOR PROTECTED ACTIVITY (Maine Human Rights Act)**

54. Plaintiff realleges and incorporates by reference paragraphs 1 through 53 as if fully set forth herein.

55. The MHRA prohibits retaliation against individuals because they oppose unlawful discrimination or participate in protected processes, including filing and pursuing discrimination complaints.

56. Plaintiff engaged in protected activity by reporting Defendant's disability-access barriers internally; by filing and pursuing a disability discrimination complaint with the MHRC (PA24-0490); and by reporting ADA-related concerns to the U.S. Department of Justice Civil Rights Division.

57. Defendant retaliated against Plaintiff because of this protected activity by terminating Plaintiff's membership (and his wife's), publicly and internally accusing Plaintiff of misconduct and blaming him for insurance and licensing problems, and seeking and obtaining a no-trespass notice to exclude Plaintiff from Defendant's property.

58. Defendant's retaliatory acts were materially adverse, were intended to punish Plaintiff and deter him and others from asserting accessibility rights, and would deter a reasonable person from engaging in protected activity.

59. As a result of Defendant's retaliation, Plaintiff suffered damages including emotional distress, reputational harm, loss of access to the organization's facilities and activities, and other consequential harm.

60. Defendant's conduct constitutes unlawful retaliation under the MHRA, entitling Plaintiff to all available legal and equitable remedies.

## COUNT III – DISABILITY DISCRIMINATION IN PUBLIC ACCOMMODATION
### (Americans with Disabilities Act, Title III)

61. Plaintiff realleges and incorporates by reference paragraphs 1 through 60 as if fully set forth herein.

62. The Americans with Disabilities Act ("ADA") prohibits disability-based discrimination by places of public accommodation and requires removal of architectural barriers and provision of accessible routes where required by law. 42 U.S.C. § 12182 (U.S. 1990).

63. Defendant owned and operated Beaver Lodge as a facility used for meetings and events, and it rented the Lodge as a wedding venue and for other functions, thereby operating a place of public accommodation under the ADA, 42 U.S.C. § 12181(7) (U.S. 1990) and within the meaning of the Maine Human Rights Act, including 5 M.R.S. § 4553.

64. Plaintiff is an individual with a disability within the meaning of the ADA. 42 U.S.C. § 12102 (U.S. 2008).

65. Defendant discriminated against Plaintiff by failing to provide accessible routes and features and by maintaining ramps and access routes that prevented or materially impeded wheelchair access, including routes that caused wheels and assistive devices to become stuck and required lifting and unsafe maneuvers.

66. Defendant's accessibility barriers and retaliatory exclusion remain in place. Plaintiff intends and desires to return to Beaver Lodge for meetings and community events but is deterred from doing so by Defendant's ongoing violations, establishing a real and immediate threat of future harm.

67. Plaintiff seeks injunctive and declaratory relief under the ADA and damages under state law as permitted to remedy and prevent ongoing ADA violations at Beaver Lodge, including orders requiring Defendant to bring access routes into compliance, adopt

accessibility policies, and ensure that individuals with mobility disabilities may safely and independently access the facility.

68. Plaintiff further seeks recovery of attorney's fees and costs as permitted for prevailing parties under the ADA. 42 U.S.C. § 12205 (U.S. 1990).

**COUNT IV – NEGLIGENCE / PREMISES LIABILITY (Maine Common Law)**

69. Plaintiff realleges and incorporates by reference paragraphs 1 through 68 as if fully set forth herein.

70. Defendant owed lawful visitors and invitees, including Plaintiff, a duty to exercise reasonable care to maintain Beaver Lodge and its access routes, including ramps and walking surfaces, in a reasonably safe condition, and to remedy or warn of dangerous conditions that Defendant knew or should have known existed.

71. Defendant breached that duty by, among other things, maintaining ramps whose design and condition foreseeably caused wheels and walkers to become stuck, required unsafe turns and lifting, and created a substantial risk that a person with mobility impairments would be forced into unsafe weight-bearing maneuvers.

72. Defendant's breach was a substantial factor in causing Plaintiff's injuries. But for Defendant's unsafe and inaccessible ramp conditions, Plaintiff would not have been forced from wheelchair use to a walker against medical advice, would not have had his assistive device become stuck, and would not have been placed in the position that led to breakage of pins in his external fixation device and as such Plaintiff's actions were reasonable and foreseeable responses to Defendant's failure to provide a safe, accessible route.

73. Plaintiff suffered damages as a result, including physical injury, pain and suffering, emotional distress, medical costs and expenses, and other losses.

74. Defendant is liable to Plaintiff for negligence and premises liability under Maine law.

### COUNT V – DEFAMATION (Maine Common Law)

75. Plaintiff realleges and incorporates by reference paragraphs 1 through 74 as if fully set forth herein.

76. Defendant, through its officers and Executive Committee, published false and defamatory statements about Plaintiff to third parties, including but not limited to statements contained in the December 5, 2024, termination letter and statements communicated to law enforcement in connection with the no-trespass request.

77. Defendant's termination letter accused Plaintiff and his wife of actions "detrimental" to Defendant, asserted that "Two Board members misled the insurance inspector" such that Defendant's insurer canceled coverage, and blamed Plaintiff for "havoc" connected to municipal and state agency involvement. These accusations, presented as fact and as grounds for expulsion, impute serious misconduct and are defamatory on their face, particularly given Plaintiff's longstanding position as Treasurer responsible for dealing with insurers and governmental entities.

78. Defendant further portrayed Plaintiff to law enforcement as engaging in "harassment," while expressly linking the purported harassment to Plaintiff's filing of complaints with the Maine Human Rights Commission and other agencies, thereby conveying the false implication that Plaintiff's protected complaints were illegitimate, wrongful, or abusive.

79. Defendant made these statements at least negligently and, on information and belief, with actual malice or reckless disregard for the truth, given Defendant's knowledge that

Plaintiff had reported ramp accessibility concerns promptly; had the right to report violations; and had served Defendant faithfully for many years. Defendant's own President acknowledged Plaintiff's competent service for approximately 15 years while simultaneously maligning Plaintiff when he asserted disability-rights concerns.

80. Any conditional privilege applicable to Defendant's communications was abused by Defendant's knowing falsity, retaliatory motive, and reckless disregard for Plaintiff's rights

81. Defendant's defamatory statements harmed Plaintiff's reputation, subjected him to hatred, contempt, ridicule, and distrust within his community and among Defendant's membership, and caused emotional distress and other consequential damages.

82. Defendant is liable to Plaintiff for defamation, and Plaintiff is entitled to recover compensatory damages and, to the extent permitted by Maine law and proven at trial, punitive damages for malicious conduct.

### VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant and award the following relief:

A. A declaration that Defendant's conduct violated the Maine Human Rights Act, 5 M.R.S. § 4551, et seq., and the ADA as alleged herein.

B. Compensatory damages in an amount to be determined at trial, including damages for physical injury, pain and suffering, emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

C. Economic damages in an amount to be determined at trial, including medical expenses and other out-of-pocket costs proximately caused by Defendant's conduct.

D.  Damages for reputational harm caused by Defendant's defamatory statements and retaliatory acts.

E.  Injunctive relief requiring Defendant to remedy accessibility barriers at Beaver Lodge, including requiring Defendant to provide and maintain accessible ramps and routes and to adopt and implement policies addressing accessibility for individuals with disabilities.

F.  Injunctive relief prohibiting Defendant from continuing retaliatory conduct, including continuing to enforce retaliatory exclusion of Plaintiff from Defendant's facilities and activities, and ordering appropriate corrective action regarding the termination and no-trespass measures to the extent necessary to prevent ongoing retaliation and to restore equal access.

G.  An award of Plaintiff's costs and, where authorized by law, reasonable attorney's fees.

H.  Pre-judgment and post-judgment interest as permitted by law.

I.  Such other and further relief as the Court deems just and equitable.

Dated: February 19, 2026                    Respectfully Submitted,

*/s/ Walter H. Foster IV*
Walter H. Foster IV, Esq., Bar No. 11047
Attorney for Plaintiff
STEVE SMITH Trial Lawyers
191 Water Street
Augusta, ME 04330
T (207) 622-3711
F (207) 707-1036
Walter@AmericanTrialGroup.com